FILED *LAL*

MAR 1 6 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN FULTON, ANTHONY MITCHELL, ANTONIO SHAW, | ) ) ) | Case No. **05C 1551** |
| Plaintiffs, | ) ) | Judge |
| v. | ) ) | Jury Demand   JUDGE JOHN W DARRAH |
| DET. ZALATORIS #20919, DET. L. ROLSTON #20101, J. BREEN #60051, DET. J. STRUCK #20857, DET. R. GIRARDI #20479, DET. E. WINSTEAD #20119, Assistant Cook County State's Attorney JAKE RUBENSTEIN individually, | ) ) ) ) ) ) ) ) ) | MAGISTRATE JUDGE NOLAN |
| Defendants. | ) | |

## COMPLAINT

NOW COME the Plaintiffs, JOHN FULTON, ANTHONY MITCHELL and ANTONIO

SHAW, by and through their attorneys, GREGORY E. KULIS AND ASSOCIATES, and

complaining against the Defendant, DET. ZALATORIS #20919, DET. L. ROLSTON #20101, J.

BREEN #60051, DET. J. STRUCK #20479, DET. R. GIRARDI #20479 and DET. E.

WINSTEAD #20119, ASA JAKE RUBENSTEIN ("ASA RUBENSTEIN") Individually, as

follows:

### FACTS

1) This action is brought pursuant to the Laws of the United States Constitution,

specifically, 42 U.S.C. §1983 and §1988, and the laws of the State of Illinois, to redress

deprivations of the Civil Rights of the Plaintiffs and accomplished by acts and/or omissions of

the Defendants committed under color of law.

2) Jurisdiction is based on Title 28 U.S.C. §1331 and §1343 and supplemental

jurisdiction of the State of Illinois.

3)      The Plaintiffs, JOHN FULTON, ANTHONY MITCHELL and ANTONIO SHAW, at all relevant times were United States citizens and permanent residents of the State of Illinois.

4)      The Defendants, ZALATORIS, ROLSTON, BREEN, STRUCK, GIRARDI and WINSTEAD, were at all relevant times a duly appointed police officers of the City of Chicago and at all relevant times were acting within their scope of employment and under color of law.

5)      The Defendant, ASA RUBENSTEIN, was at all relevant times, an attorney with the Cook County State's Attorney's Office and acting within his scope of employment.

6)      On or about March 10, 2003, an individual named Christopher Collazo was murdered and his body was found.

7)      Numerous witnesses described Collazo as an active gang member of the "Maniac Latin Disciples."

8)      In fact, Defendant Zalatoris admitted at some point that Collazo had a practice of altering his bus travel out of fear of being attacked by rival gang members.

9)      The only witness who provided any information to the police was Sid Taylor, who told police that he called them because he looked out his window and saw a fire.

10)     Mr. Taylor could not provide any other information other than he saw two males in a dark alley near the fire.

11)     There was conflicting information regarding the race of the males and Mr. Taylor stated he never saw a vehicle.

2

12) The police learned from the victim's friend, Marcus Marinelli, that Collazo and Marinelli robbed the Plaintiff, John Fulton, at gunpoint approximately 5 ½ weeks before Collazo's murder.

13) Marinelli stated to the officers that he had a 'hunch' that maybe the three black boys that were robbed killed Collazo.

14) There was no evidence to support Marinelli's hunch about the Plaintiffs and the murder of Collazo.

15) This hunch led Defendant Zalatoris to Johnitta Griffin ("Precious"), who introduced Plaintiff Fulton to Collazo about 6 weeks prior to the murder.

16) On March 11, 2003, the police questioned Precious who admitted her involvement in the gun deal and introducing Plaintiff Fulton to Collazo.

17) Precious denied knowing anything about Collazo's murder.

18) On March 13, 2003 at 11:00 p.m., Precious was taken to Area One for questioning

19) The police have admitted that between March 11th and March 13th, there was no new information about the murder.

20) Defendant Zalatoris also admitted that Precious, who was 17 years old at the time, was placed in a room, left alone and later told that she could be charged with murder.

21) Precious was not allowed to leave and was held against her will and without probable cause.

22) After being shown bloody pictures of the victim and being yelled at, in the early morning hours of March 14, 2003, with the Defendants' coaxing, Precious offered information regarding the night of the murder.

3

23) At 9:45 a.m., approximately 11 hours after being brought into Area One the night before, Precious gave a written statement to Assistant States Attorney Rubenstein and Defendant Rolston.

24) Precious' written statement offered a lot of detail about the gun deal between Plaintiff Fulton and Collazo but very little regarding the murder.

25) The Defendants refused to follow up and investigate any evidence of the Plaintiffs' innocence.

26) Precious was then brought before the Grand Jury to testify.

27) One of the Defendants brought her to the Grand Jury and threatened her and coerced false testimony.

28) Precious' Grand Jury testimony contained numerous discrepancies from her written statement.

29) For example, Precious testified that Fulton called her from his cell phone prior to and on the day of Collazo's murder.

30) Defendant Zalatoris admitted that he never attempted to corroborate that such calls were in fact made.

31) There was no evidence that Plaintiff Fulton, Plaintiff Mitchell or Plaintiff Shaw were with the decedent on the date of the murder.

32) On March 18, 2003, Plaintiff Fulton was arrested and brought to Area One to be questioned about Collazo's murder.

33) Plaintiff Fulton maintained his innocence when he was brought in.

34) Defendants Rolston and Girardi then obtained consent to search Plaintiff Fulton's apartment and vehicle.

4

35)   The Defendants did not find any blood in Plaintiff Fulton's vehicle despite the fact that, given the circumstances of the murder, there would have been a lot of blood coming from the decedent's body.

36)   There was no evidence connecting Plaintiff Fulton to Collazo at all.

37)   At some point, Plaintiff Fulton was turned over to Defendants Zalatoris and Breen.

38)   Plaintiff Fulton again denied any involvement in Collazo's murder.

39)   Plaintiff Fulton also informed Defendants Rolston and Winstead that there was a videotape which showed he was with her girlfriend at the time of the incident.

40)   Defendants, including ASA Rubenstein, reviewed said videotape confirming Plaintiff Fulton's alibi but refused to release Plaintiff Fulton.

41)   Plaintiff Fulton was also presented with Precious' coerced and false testimony.

42)   Plaintiff Fulton continued to deny his involvement in the murder.

43)   Through physical and psychological abuse, the Defendants then forced and coerced Plaintiff Fulton to make a statement regarding Collazo's murder.

44)   Due to the Defendants' unlawful actions, Plaintiff Fulton was forced to make an alleged fabricated statement regarding Collazo's murder.

## COUNT I – FALSE ARREST

1-44)   The Plaintiffs hereby reallege and incorporate their allegations of paragraphs 1-44 of the Facts as their respective allegations of paragraphs 1-44 of Count I as though fully set forth herein.

45)   Despite the discrepancies in the information they had before them and the exculpatory evidence, the Defendants charged Plaintiff Fulton with First Degree Murder.

5

46) Defendant Zalatoris then arrested Plaintiff Mitchell.

47) Plaintiff Mitchell also denied any involvement in Collazo's murder.

48) The Defendants then presented Plaintiff Mitchell with Plaintiff Fulton's coerced statement.

49) Through physical and psychological abuse, the Defendants then coerced and forced Plaintiff Mitchell into making a statement about Collazo's murder.

50) Plaintiff Mitchell was charged with First Degree Murder.

51) The Defendants also arrested Plaintiff Shaw and brought him to Area One.

52) Defendant Zalatoris then presented the false statements to Plaintiff Shaw and through psychological and physical abuse coerced him into a false confession as well.

53) Plaintiff Shaw was also charged with First Degree Murder.

54) There was no evidence tying the Plaintiffs to Collazo.

55) The Defendants did not have a reasonable belief that the Plaintiffs had murdered Collazo.

56) There was significant exculpatory evidence to show that the Plaintiffs had nothing to do with the murder and did not commit the murder.

57) There was no physical evidence to support probable cause for the Plaintiffs' arrests.

58) The Plaintiffs were arrested without any facts to support probable cause.

59) The Defendants refused to investigate or even consider the exculpatory evidence.

60) The Plaintiffs did not commit a crime or break any laws.

61) Said actions of the Defendants were malicious, intentional, willful and wanton.

62) Said actions of the Defendants violated the Plaintiffs' Fourth and Fourteenth

6

Amendment Rights of the United States Constitution and were in violation of said rights protected by 42 U.S.C. §1983.

63)     As a direct and proximate consequence of said conduct of Defendants, the Plaintiffs suffered violations of their constitutional rights, emotional anxiety, humiliation, fear, monetary loss and pain and suffering.

WHEREFORE, the Plaintiffs, JOHN FULTON, ANTHONY MITCHELL and ANTONIO SHAW, pray for judgment against Defendants ZALATORIS, ROLSTON, BREEN, STRUCK, GIRARDI and WINSTEAD in excess of ONE HUNDRED THOUSAND AND 00/100 ($100,000.00) DOLLARS compensatory damages and FIFTY THOUSAND AND 00/100 ($50,000.00) DOLLARS punitive damages, plus attorney's fees and costs.

## COUNT II – COERCIVE INTERROGATION

1-59)   The Plaintiffs hereby reallege and incorporate their allegations of paragraphs 1-59 of Count I as their respective allegations of paragraphs 1-59 of Count II as though fully set forth herein.

60)     Defendant ASA RUBENSTEIN was present during the coercive interrogation and actively participated in the psychological abuse towards the Plaintiffs.

61)     The Defendants, along with Defendant ASA RUBENSTEIN, through their physical and psychological coercion, constructed false oral admissions and false written statements which they attributed to the Plaintiffs.

62)     Defendant ASA RUBENSTEIN performed various investigatory roles such as going to the scene of Collazo's murder and to the hospital to verify Plaintiff Fulton's alibi.

7

63)     Even after reviewing the hospital videotape showing that Plaintiff FULTON was at the hospital at the time of Collazo's murder, Defendant ASA RUBENSTEIN refused to believe Plaintiff Fulton's denial of involvement in the murder.

64)     In fact, Defendant ASA RUBENSTEIN revised Plaintiff Fulton's fabricated and coerced statement to account for the hospital videotape.

65)     The Defendants failed to inform any of the prosecutors in the Plaintiffs' criminal cases that the admissions they attributed to the Plaintiffs were false, fabricated and coerced through physical and psychological abuse.

66)     The Defendants' actions, individually, jointly and in conspiracy, in coercively interrogating the Plaintiffs using physical and psychological techniques, resulted in false and fabricated admissions to Collazo's murder.

67)     There was no evidence to support these alleged fabricated admissions.

68)     Said actions of the Defendants were malicious, intentional, willful and wanton.

69)     Said actions of the Defendants violated the Plaintiffs' Fifth and Fourteenth Amendment Rights of the United States Constitution and were in violation of said rights protected by 42 U.S.C. §1983.

70)     As a direct and proximate consequence of said conduct of Defendants, the Plaintiffs suffered violations of their constitutional rights, emotional anxiety, humiliation, fear, monetary loss and pain and suffering.

WHEREFORE, the Plaintiffs, JOHN FULTON, ANTHONY MITCHELL and ANTONIO SHAW, pray for judgment against Defendants ZALATORIS, ROLSTON, BREEN, STRUCK, GIRARDI, WINSTEAD and RUBENSTEIN, in excess of ONE HUNDRED THOUSAND AND 00/100 ($100,000.00) DOLLARS compensatory damages and FIFTY

8

THOUSAND AND 00/100 ($50,000.00) DOLLARS punitive damages, plus attorney's fees and costs.

## COUNT III – CONSPIRACY

1-66)   The Plaintiffs hereby reallege and incorporate their allegations of paragraphs 1-66 of Count II as their respective allegations of paragraphs 1-66 of Count III as though fully set forth herein.

67)   After Collazo's murder, the Defendants reached an agreement amongst themselves to wrongfully arrest and charge the Plaintiffs.

68)   The Defendants abused and coerced these the Plaintiffs, who are minorities and two of who were minors at the time of their arrest, to make false confessions.

69)   The Defendants misconduct was motivated by racial animus and constituted purposeful discrimination.

70)   These actions deprived the Plaintiffs of their constitutional rights.

71)   The Defendants conspired, directly or indirectly, for the purpose of depriving the Plaintiffs of Equal Protection of the Law.

72)   The Defendants further conspired to deprive the Plaintiffs of exculpatory evidence to which he was lawfully entitled.

73)   Each of the Defendants or co-conspirators committed overt acts to further the conspiracy against the Plaintiffs.

74)   In doing so, the Defendants took actions in furtherance of this conspiracy.

75)   The Defendants actions were malicious, willful and wanton.

76)   Said actions of the Defendants violated the Plaintiffs' Fourth and Fourteenth

9

Amendment Rights of the United States Constitution and were in violation of said rights protected by 42 U.S.C. §1983.

77)    As a direct and proximate consequence of said conduct of Defendants, the Plaintiffs suffered violations of their constitutional rights, emotional anxiety, humiliation, fear, monetary loss and pain and suffering.

WHEREFORE, the Plaintiffs, JOHN FULTON, ANTHONY MITCHELL and ANTONIO SHAW, pray for judgment against Defendants ZALATORIS, ROLSTON, BREEN, STRUCK, GIRARDI, WINSTEAD and RUBENSTEIN, in excess of ONE HUNDRED THOUSAND AND 00/100 ($100,000.00) DOLLARS compensatory damages and FIFTY THOUSAND AND 00/100 ($50,000.00) DOLLARS punitive damages, plus attorney's fees and costs.

## COUNT IV – DEPRIVATION OF RIGHT TO FAIR TRIAL

1-74)    The Plaintiffs hereby reallege and incorporate their allegations of paragraphs 1-74 of Count III as their respective allegations of paragraphs 1-74 of Count IV as though fully set forth herein.

75)    The Defendants failed to inform any of the prosecutors in the Plaintiffs' criminal cases that the admissions they attributed to the Plaintiffs were false, fabricated and coerced through physical and psychological abuse.

76)    The Defendants' actions, individually, jointly and in conspiracy, in coercively interrogating the Plaintiffs using physical and psychological techniques, resulted in false and fabricated admissions to Collazo's murder.

77)    Said actions of the Defendants were malicious, intentional, willful and wanton.

78)    Said actions of the Defendants violated the Plaintiffs' Fifth and Fourteenth

10

Amendment Rights of the United States Constitution and were in violation of said rights protected by 42 U.S.C. §1983.

79)     As a direct and proximate consequence of said conduct of Defendants, the Plaintiffs suffered violations of their constitutional rights, emotional anxiety, humiliation, fear, monetary loss and pain and suffering.

WHEREFORE, the Plaintiffs, JOHN FULTON, ANTHONY MITCHELL and ANTONIO SHAW, pray for judgment against Defendants ZALATORIS, ROLSTON, BREEN, STRUCK, GIRARDI, WINSTEAD and RUBENSTEIN in excess of ONE HUNDRED THOUSAND AND 00/100 ($100,000.00) DOLLARS compensatory damages and FIFTY THOUSAND AND 00/100 ($50,000.00) DOLLARS punitive damages, plus attorney's fees and costs.

## JURY DEMAND

The Plaintiffs, JOHN FULTON, ANTHONY MITCHELL and ANTONIO SHAW, request a trial by jury.

Respectfully submitted,

Shehnaz P Mansuri
GREGORY E. KULIS AND ASSOCIATES

GREGORY E. KULIS AND ASSOCIATES
30 North LaSalle Street, Suite 2140
Chicago, Illinois 60602
(312) 580-1830

11